**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DAVID JACKSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 11-0474 (ESH)** |
| ) | |
| **UNITED STATES PAROLE COMMISSION,** ) | |
| et al., ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION**

David Jackson has sued Isaac Fulwood, Jr., Cranston J. Mitchell, Patricia K. Cushwa, Patricia Wilson Smoot, Aprille Cole, and Jamie Brand in their official capacities, as well as the United States Parole Commission ("USPC"), alleging that the special restrictions imposed on his parole deprive him of his Fifth Amendment right to due process and his First Amendment right to freedom of speech and freedom of association, and that the imposition of these restrictions was arbitrary and capricious under the Administrative Procedure Act ("APA"). The USPC voluntarily withdrew the parole conditions Jackson complained of on March 30, 2011, and subsequently moved to dismiss the case under Fed. R. Civ. P. 12(b)(1), arguing that the Court lacks subject matter jurisdiction because Jackson's claims are moot. For the reasons stated herein, defendants' motion will be denied.

**BACKGROUND**

Jackson pled guilty to Attempted Carnal Knowledge, a misdemeanor, in Superior Court on September 25, 1981, and was sentenced to three years' probation. (Compl. ¶¶ 12-13, 18.) Jackson was not required to register as a sex offender. (*Id.* ¶ 15.) Jackson was subsequently incarcerated and, on January 3, 2005, was "released after serving time for a technical violation of

the terms of his parole."[1]  (*Id.* ¶ 17.)  On January 19, 2005, the Court Services and Offender Supervision Agency ("CSOSA"), which provides "community supervision oversight for D.C. Code offenders," assigned Jackson to its Sex Offender Unit.  (*Id.* ¶¶ 9, 18.)  Jackson alleges that the CSOSA assigned him to that Unit because of his 1981 conviction.  (*Id.* ¶ 18.)  In 2007, a CSOSA officer ordered Jackson to participate in a six-month Sex Offender Treatment program.  (*Id.* ¶ 20.)  Jackson completed the program in November 2007, and was found to pose a "low risk for the recurrence of deviant sexual acts."  (*Id.*)

In November 2009, Jackson was incarcerated for an "administrative violation" of his parole conditions and, on November 18, 2010, was again released.  (*Id.* ¶ 21.)  Upon Jackson's release, the USPC issued a Notice of Action that stated that Jackson "need[ed] . . . substance abuse treatment," but that did not impose any sex offender monitoring.  (*Id.* ¶ 22.)  Nevertheless, CSOSA again assigned Jackson to supervision by the Sex Offender Unit.  (*Id.* ¶ 23.)  At some point between November 18 and November 30, Jamie Brand, a CSOSA officer, issued a notice of "Modification of Release Conditions" recommending that Jackson be subject to a number of "special conditions."  (*Id.*, Ex. 2, at 1.)  The document stated: "[b]y copy of this proposal, NOTICE is hereby given to the releasee, who may object or comment to the Commission within ten days after he receives this NOTICE."  (*Id.*)  Although Jackson's complaint is ambiguous, he appears to allege that he never received this notice.  (*See id.* ¶ 24.)  On November 30, 2010, the USPC notified Jackson that it had adopted a Memorandum imposing special restrictions on his parole, including: (A) a required "mental health program with 'special emphasis' on long-term sex offender testing and treatment"; (B) required evaluation for sex-offense treatment therapy and periodic, random physiological testing, to be paid for, in part, by Jackson himself; (C)

---

[1] The Complaint and pleadings do not specify why Jackson was on parole or what "technical violation" he committed.

restrictions on any contact with children under eighteen, including his own children and step-children, without prior written approval, and a requirement that he provide the "name, address, and phone number of anyone he "socialized with," if the person cared for a child under the age of eighteen; (D) restrictions on coming within 200 yards of "any place where children under age eighteen often gather" without prior written approval; (E) restrictions on owning or using any "device with access to any on-line computer service" without prior approval; (F) restrictions on owning any pornographic material; (G) required, annual polygraph examinations; (H) periodic, unannounced examinations of his computer; and (I) GPS monitoring. (*Id.* ¶ 24.)  Jackson alleges that these restrictions were instituted "without prior notice, a hearing or individualized investigation," were unjustified, and were an "atypical and significant hardship."  (*Id.* ¶ 25.)

On December 6, 2010, Jackson sent a letter to CSOSA formally challenging the restrictions, but was denied any relief.  (*Id.* ¶ 26.)  On March 4, 2011, he filed suit in this Court, seeking to enjoin the imposition of these conditions of his parole.  (*Id.* ¶ 1.)  On March 30, the parole provisions at issue "were lifted."  (Defs.' Mem. of P. & A. In Supp. of Defs.' Mot. to Dismiss ("Defs.' Mot.") at 1.)  On July 6, defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).

## ANALYSIS

## I.      STANDARD OF REVIEW

On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The Court must accept all factual allegations in the complaint as true and give the plaintiff the benefit of all reasonable inferences from the facts alleged.  *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C.

Cir. 2005).  A court may dismiss for lack of subject matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Richardson v. United States*, 193 F.3d 545, 549 (D.C. Cir. 1999) (quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998)).  Where a court's subject matter jurisdiction is called into question, it may consider matters outside the pleadings to ensure it has power of the case.  *See Jerome Stevens Pharms, Inc.*, 402 F.3d at 1253.

## II.    MOOTNESS

Article III of the Constitution limits the Court to adjudication of "actual, ongoing controversies."  *Sierra Club v. Jackson*, No. 10-5280, 2011 WL 2600841, at *2 (D.C. Cir. July 1, 2011).  Thus, if "an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed."  *Beethoven.com LLC v. Librarian of Cong.*, 394 F.3d 939, 950 (D.C. Cir. 2005) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).  However, in "at least two kinds of cases the fact that the specific conduct that gave rise to the case has ceased does not mean that the challenge to the legality of that conduct is moot."  *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009).  A claim for declaratory relief will not be moot if the claim "fits the exception for cases that are capable of repetition, yet evading review, or falls within the voluntary cessation doctrine."  *City of Houston, Tex. v. Dep't of Housing & Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994) (internal citations and quotation marks omitted).

Defendants argue that the case is moot because the USPC has removed the parole conditions to which Jackson objected and, therefore, the violation Jackson alleged is no longer occurring.  (Defs.' Mot. at 5-6.)  Jackson concedes that the defendants have "removed the

Special Restrictions" from his parole. (*See* Pl.'s Opp'n at 3.) Thus, the specific conduct giving rise to his lawsuit has ceased. Nevertheless, he argues that the case is not moot because the voluntary cessation doctrine applies (*id.* at 6-11), because his claim is capable of repetition, yet evading review (*id.* at 11-12), and because his complaint seeks nominal damages. (*Id.* at 12-13.) Because the Court agrees that the voluntary cessation doctrine applies, it need not determine whether Jackson's claim is capable of repetition, yet evading review.[2]

### A.    Voluntary Cessation

"As a general rule, 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot.'" *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). Where a defendant voluntarily ceases allegedly unlawful activity, the case will only be moot if the defendant shows that there is "no reasonable expectation" that the violation will recur and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (quoting *Cnty. of Los Angeles*, 440 U.S. at 631). Defendants have the "heavy burden" of showing that "'subsequent events'" make it "'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"[3] *Parents Involved in Cmty. Sch.*

---

[2] Defendants argue in their reply that sovereign immunity bars Jackson from seeking nominal damages from the USPC or USPC and CSOSA officials in their official capacities. (Defs.' Reply at 6-7 (citing *Fletcher v. Dist. of Columbia*, 481 F. Supp. 2d 156, 161-62 (D.D.C. 2007)).) Because the Court finds that the voluntary cessation doctrine applies, and because defendants have not separately moved to dismiss this claim for damages, the Court need not address this argument.

[3] There is law in this Circuit suggesting that, at least when a plaintiff challenges an agency's policy, the burden may shift to plaintiff to point to "evidence indicating that the challenged [policy] will likely be reenacted.'" *Larsen*, 525 F.3d at 4 (quoting *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997). Here, however, Jackson challenges specific action taken by defendants, not a general policy. Moreover, unlike in *Larsen*, Jackson has alleged that defendants are "likely to" reimpose the parole restrictions. *See id.*

*v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

Defendants point out that Jackson's parole restrictions have been completely withdrawn. (Defs.' Mot. at 9.)  Therefore, they argue, the effects of the alleged violation have been "completely eradicated," and there is no reasonable expectation that the restrictions will be reimposed.  (Defs.' Mot. at 9-10.)  To support this claim, they have attached a declaration from Deirdre Jackson, a Case Services Administrator for the USPC.[4]  (Defs.' Mot., Ex. 2, Decl. of Deirdre Jackson ("Jackson Decl.") at 1.)  Ms. Jackson, whose duties include "making recommendations to the [USPC] concerning conditions of supervision for releasees," states:

> because the United States Probation Office ["USPO"] for the Eastern District of Virginia . . . determined that [Jackson] was no longer in need of sex offender special conditions, and because he has not committed any sex-related offenses since that time, I do not expect that the USPO supervising Mr. Jackson will request any such conditions unless new sexual misconduct by Mr. Jackson were to raise a legitimate concern that such condition(s) have become newly necessary.

(Jackson Decl. ¶ 10.)  Defendants suggest that a declaration that "it is unlikely that [Jackson] will be subjected to the conditions again" (Def.'s Mot. at 9) is sufficient to make it "absolutely clear that the allegedly wrongful behavior could not reasonable be expected to recur."  *Parents Involved in Cmty. Sch.*, 551 U.S. at 719.  Perhaps recognizing the weakness of this argument, defendants also argue that even if Jackson's parole officer were inclined to reimpose the restrictions, she could not do so without providing Jackson ten days to comment and, therefore, the wrongful behavior Jackson alleges cannot recur.  (Defs.' Reply at 4.)

---

[4] As noted above, the Court may consider materials outside of the pleadings in order to assure itself that it has subject matter jurisdiction.  *See supra*, Part I.

### 1.      No Reasonable Expectation That Conduct Will Recur

"[T]he government cannot escape the pitfalls of litigation by simply giving in to a plaintiff's individual claim without renouncing the challenged policy, at least where there is a reasonable chance of the dispute arising again between the government and the same plaintiff." *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs*, 74 F.3d 1308, 1311 (D.C. Cir. 1996), *vacated on other grounds*, 519 U.S. 1 (1996).  Thus, because defendants have merely withdrawn the special parole restrictions, without explanation, the voluntary cessation doctrine will apply if there is a reasonable chance the dispute could arise again.  Jackson argues that the violations he allege could recur because he could be again imprisoned and again released on parole, because defendants could simply conduct a new review of his case, or because defendants could re-impose the restrictions if the supervision of his parole is transferred back to the District of Columbia or to another jurisdiction.  (Pl.'s Opp'n at 7-9.)

Jackson's argument that the restrictions could be re-imposed "if he were found to have violated his parole, returned to prison, and again released on parole" (Pl.'s Opp'n at 9) fails because Jackson himself is "able – and indeed required by law – to prevent such a possibility from occurring."  *Lane v. Williams*, 455 U.S. 624, 632 n.13 (1982) (rejecting argument that case was not moot because a "possibility exists under state law that respondents' parole violation may be considered in a subsequent parole determination").  Indeed, the Supreme Court has "rejected analogous claims to Article III standing in other contexts."  *Spencer v. Kemna*, 523 U.S. 1, 15 (1998) (citing *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (no standing where threat of injury depended on plaintiffs being "prosecuted for violating valid criminal laws"); *Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983)).  Courts are "reluctant to find a reasonable probability of repetition where the action will be repeated based on the petitioner's own wrongdoing."  *See*

*Pierce v. Thomas*, No. 08-705, 2009 WL 2476606, at *3 (D. Or. Aug. 10, 2009); *cf. also Toor v. Holder*, 717 F. Supp. 2d 100, 106 (D.D.C. 2010) (case was moot because it was "quite unlikely" that plaintiff would be "charged, convicted, and incarcerated in the United States for another crime and then appl[y] for transfer"). Thus, the possibility that Jackson could violate his parole, return to prison, and be paroled once again does not prevent the case from being moot.

Jackson's argument that his parole conditions may be reexamined at any time, or that the restrictions may be re-imposed if supervision of his parole is transferred to a different location, is more convincing. (Pl.'s Opp'n at 8-9.) In a similar case in which the plaintiff challenged "Special Conditions" on his parole, the Court found that the voluntary cessation doctrine applied. *Goings v. Court Servs. & Offender Supervision Agency*, No. 11-501, 2011 WL 1837749, at *4-*5 (D.D.C. May 3, 2011). In that case, the government revoked two of the conditions plaintiff complained of, then argued that the case was moot. *Id.* at *10. Although the Court found that the case was not moot because only a "portion" of the conditions had been modified, *id.* at *9, it also found that, "even with respect to the modified conditions," the defendant's "subsequent modification of the conditions amounts to a voluntary cessation." *Id.* Specifically, the Court noted that CSOSA "remain[ed] free to re-impose conditions" on the plaintiff at any point, because the "conditions placed on the plaintiff's probation are assessed on 'an ongoing basis.'" *Id.* at *11. Defendants attempt to distinguish *Goings* by pointing out that, in that case, the CSOSA had altered "*some*, but not all" of the conditions, while here, all of the conditions that Jackson objects to have been removed.[5] (Defs.' Reply at 5.) However, the Court in *Goings* was

---

[5] Defendants also observe that Jackson, unlike the plaintiff in *Goings*, raises a "general challenge to an alleged blanket failure to provide notice and an opportunity to be heard." (Defs.' Reply at 4-5.) Defendants do not explain how or why this should affect the Court's inquiry into the likelihood that the conditions on Jackson's parole may be reinstated.

clear that even those conditions that had been altered could be "re-impose[d]," and, therefore, the defendants had failed to show that there was "no reasonable expectation that the alleged violation will recur." 2011 WL 1837749, at *11.

The "rationale supporting" voluntary cessation "as an exception to mootness" is that, without an order from the Court preventing it from continuing the allegedly illegal practice, "the defendant is 'free to return to [its] old ways' – thereby subjecting the plaintiff to the same harm but, at the same time, avoiding judicial review." *Qassim v. Bush*, 466 F.3d 1073, 1075 (D.C. Cir. 2006) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). This case illustrates the importance of this doctrine. Defendants do not allege that they have altered their procedures for imposing special parole restrictions or that the type of restrictions they impose have changed. Nor do they promise to refrain from imposing those restrictions on Jackson. All defendants offer is a declaration from a USPC administrator stating that she "does not expect" the parole officer supervising Jackson to request that the special parole restrictions be reimposed. (Jackson Decl. ¶ 10.) The declaration fails to even comment as to whether such a request would or could be approved. Because defendants remain free to "return to [their] old, allegedly illegal ways," the voluntary cessation doctrine will be applied. *See Natural Law Party v. Fed. Election Comm'n*, 111 F. Supp. 2d 33, 40-41 (D.D.C. 2000).

Defendants argue that even if there were a reasonable expectation that Jackson's parole officer would re-impose the special restrictions, it would be impossible for the precise legal wrong alleged by Jackson – "the imposition of parole provisions without notice and an opportunity to be heard" – to recur because USPC regulations prevent "amending or modifying parole conditions" without a ten-day notice and comment period. (Defs.' Reply at 2 (citing 28 C.F.R. § 2.204(c)(2)).) Because the "specific safeguards . . . governing the amendment of parole

conditions" render defendants "incapable of re-imposing the provisions at issue without notice and opportunity to be heard," it is impossible for the alleged constitutional violations to recur. (Defs.' Reply at 2.) This argument fails for two reasons. First, defendants ignore the fact that the *original notice* of the restrictions "modify[ing] the conditions of release," which Jackson apparently never received (Compl. ¶ 24), offered him the opportunity to "object or comment to the Commission within ten days." (Compl. Ex. 2, at 1.) They do not attempt to explain why he was not sent the original notice and offer no assurances that they will notify him of proposed restrictions in the future. Second, and more importantly, Jackson's complaint does more than simply allege that he was denied "notice and opportunity to be heard," – it alleges that the process of imposing restrictions on his parole was deficient because there was no notice, hearing, or individualized investigation, and that the restrictions were "unjustified." (Compl. ¶ 25.) Moreover, it alleges that the USPC violated the APA by imposing the restrictions "without any findings that their imposition would benefit public safety or [Jackson's] rehabilitation." (*Id.* ¶ 40.) Defendants suggest that, by providing notice and ten days to comment on future restrictions, they have rendered Jackson's complaint moot because the legal wrong he complains of could not reasonably recur. To address this argument, the Court would need to find that the process offered by defendants is sufficient to satisfy the Fifth Amendment and the APA. This is not a mootness argument but, rather, an invitation to rule on the merits of Jackson's claim, "which is precisely the dispute that the Court is tasked with deciding." *See Goings*, 2011 WL 1837749, at *12.

## CONCLUSION

For the reasons stated herein, the Court concludes that defendants have failed to show that there is "no reasonable expectation" that the alleged violation will recur and, therefore, the

voluntary cessation doctrine applies.[6]  Defendants' motion to dismiss for lack of subject matter

jurisdiction will be denied, and a separate Order accompanies this Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

DATE:  August 30, 2011

---

[6] Because defendants have failed to show that there is no reasonable expectation that the conduct at issue will recur, the Court need not consider whether the effects of the violation have been "completely eradicated."